1
2
3
4
5
6
7
8
9
10

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BENJAMIN MONTEMAYOR, | Case No.:  2:21-cv-03124-CBM-(ASx) |
|      Plaintiff, | |
| v. | **ORDER RE: DEFENDANTS CITY OF LOS ANGELES, CHIEF MICHEL MOORE, OFFICERS ANTHONY LOPEZ, ROBERT MARTINEZ, AND HENRY FELIX'S MOTIONS FOR SUMMARY JUDGMENT [68, 75]** |
| CITY OF LOS ANGELES et al., | |
|      Defendant. | |

The matters before the Court are Defendants City of Los Angeles, Chief Michel Moore, Officer Anthony Lopez, Officer Robert R. Martinez, and Officer Henry Felix's Motions for Summary Judgment.[1] (Dkt. Nos. 68 and 75.)  The matters are fully briefed.

## I.     BACKGROUND

This is a civil rights action filed by Plaintiff Benjamin Montemayor ("Plaintiff") on April 12, 2021, arising from the protests and demonstrations which occurred throughout Los Angeles in late May and early June of 2020 in response to the death of George Floyd.  Plaintiff's original complaint named the

---

[1] Officer Felix filed a Joinder (Dkt. No. 74) to the City Defendants' Statement of Uncontroverted Facts and Conclusions of Law (Dkt. No. 69) and Exhibits (Dkt. No. 70.)

City of Los Angeles, Chief Michael Moore in his official and individual capacities, and Does 1-10 as defendants and asserted the following thirteen causes of action: (1) Excessive Force, 42 U.S.C. § 1983; (2) Failure to Intervene, 42 U.S.C. § 1983; (3) Freedom of Speech and Association, 42 U.S.C. § 1983; (4) Municipal Liability—Unconstitutional Policy, Practice, or Custom, 42 U.S.C. § 1983; (5) Municipal Liability – Ratification, 42 U.S.C. § 1983; (6) Municipal Liability—Failure to Train, Supervise, Discipline, or Correct, 42 U.S.C. § 1983; (7) violation of the Bane Act, Cal. Civil Code § 52.1; (8) violation of the Ralph Act, Cal. Civil Code § 51.7; (9) Assault; (10) battery by Peace Officer; (11) negligence; (12) intentional infliction of emotional distress, Cal. Gov't Code §§ 815.2, 820; and (13) declaratory relief 28 U.S.C. § 2201.  (Dkt. No. 1.)

Plaintiff filed the First Amended Complaint ("FAC") on June 14, 2021, which asserted the same causes of action. (Dkt. No. 18.)  The FAC named the City of Los Angeles, Chief Michael Moore, Sergeant Ruben Martinez, Officer Henry Felix, Officer Anthony Lopez, and Officer Robert Martinez as defendants. (*Id*.) On September 10, 2021, the parties filed a stipulation to dismiss Sergeant Ruben Martinez from the action with prejudice (Dkt. No. 38), which the Court approved on the same day (Dkt. No. 39).

On August 22, 2022, the Court approved the parties' joint stipulation to dismiss all claims against Chief Moore in his official capacity.[2]  (Dkt. No. 66.) The stipulation also dismissed Plaintiff's ninth, tenth, and twelfth causes of action against Chief Moore in his individual capacity and Plaintiff's second cause of action for Failure to Intervene against all Defendants.  (*Id.*)

Defendants City of Los Angeles (the "City"), Chief Michael Moore ("Chief Moore"), Officer Anthony Lopez ("Lopez"), and Officer Robert Martinez ("Martinez") (collectively, the "City Defendants"), filed a Motion for summary

---

[2] All references to Chief Moore hereinafter are as to his individual capacity.

judgment as to all claims asserted against them. (Dkt. No. 68.)  Defendant Officer Henry Felix ("Felix") separately filed a Motion for Summary Judgment as to all claims asserted against him.  (Dkt. No. 75.)[3]

## II.   STATEMENT OF THE LAW

On a motion for summary judgment, the Court must determine whether, in viewing the evidence in the light most favorable to the nonmoving party, there are any genuine issues of material fact.  *Simo v. Union of Needletrades, Indus. & Textile Employees*, 322 F.3d 602, 609-10 (9th Cir. 2003); Fed. R. Civ. P. 56. Summary judgment against a party is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  A factual dispute is "material" only if it might affect the outcome of the suit under governing law.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party.  *Id*. at 249.  The evidence presented by the parties must be admissible.  Fed. R. Civ. P. 56(e).  In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence.  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  Rather, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [the nonmovant's] favor."  *Anderson*, 477 U.S. at 255.  But the non-moving party must come forward with more than "[t]he mere existence of a scintilla of evidence."  *Id*. at 252.

## III.   OBJECTIONS TO EVIDENCE

The Court's ruling on the City Defendants' evidentiary objections (Dkt. No.

---

[3] The City Defendants' and Felix's respective Motions for Summary Judgment are collectively referred to as the "Motions".

136) is set forth in a separate order.  The City Defendants and Felix filed statements of uncontroverted facts and conclusions (Dkt. Nos. 69, 76) to which Plaintiff filed statements of genuine disputes (Dkt. Nos. 125, 128-2) indicating the facts that are in dispute.  The Court therefore, does not consider the disputed facts as evidence for purposes of ruling on the Motions.

## IV.    REQUEST FOR JUDICIAL NOTICE

Plaintiff filed a request for judicial notice ("RJN") in opposition to Defendants' Motions (Dkt. No. 129), which requests that the Court take judicial notice of certain documents pursuant to Federal Rule of Evidence 201.  The City Defendants filed objections to Plaintiff's RJN with respect to one of two documents. (Dkt. No. 135).

Rule 201 provides that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201.

Plaintiff requests the Court take judicial notice of its Order granting a preliminary injunction in the related case, *Black Lives Matter Los Angeles, et al. v. City of Los Angeles, et al. ("BLMLA"),* Case No. 20-cv-05027-CBM-AS, Dkt. 102.  Defendants do not object to this request.  Judicial notice is appropriate for "undisputed matters of public record, including documents on file in federal or state courts," *Harris v. City of Orange County,* 682 F.3d 1126, 1132 (9th Cir. 2012) (internal citations omitted).  Thus, the Court **GRANTS** Plaintiff's RJN as to the Order granting a preliminary injunction in the BLMLA action.

Plaintiff further requests the Court take judicial notice of the "Independent Examination of the Los Angeles Police Department 2020 Protest Response," (also known as the "Chaleff Report").  A team including Commissioner Gerald Chaleff examined the LAPD's response to the demonstrations that occurred after the death of George Floyd.  Mr. Chaleff was appointed to the Los Angeles Board of Police

Commissioners and served as its President from 1999 to 2001. The Chaleff Report is publicly available on the City of Los Angeles' website. Plaintiff notes that this Court previously took judicial notice of the Chaleff Report in the related class action *BLMA*, in the context of a preliminary injunction. In *BLMA*, the Court noted that the Chaleff report is "presumed trustworthy because it is a public report made available on the City of Los Angeles, City Clerk website." *BLMLA*, Case No. 20-cv-05027-CBM-AS, Dkt. 101 at 5 (citing *Daniels-Hall v. Nat'l Educ. Ass'n,* 629 F.3d 992, 998 (9th Cir. 2010) and *Montiel v. City of Los Angeles*, 2 F.3d 335, 341 (9th Cir. 1993)). Defendants object to the Court taking judicial notice of the contents of the Chaleff Report, but do not object to the Court taking judicial notice of its existence. Defendants' objection is **OVERRULED** and Plaintiff's Request for Judicial Notice of the Chaleff Report is **GRANTED**. The Court takes judicial notice of the Chaleff Report and considers its findings for purposes of Defendants' Motions.

## V.   DISCUSSION

**A.   Section 1983 Claims**

### 1. Fourth Amendment Excessive Force (First Cause of Action)

Plaintiff alleges that Felix, Lopez, and Martinez used excessive force when they "attacked and shot Plaintiff with less lethal force." With respect to each officer, Plaintiff alleges the following conduct constitutes excessive force: (1) Martinez "shoved" Plaintiff out of the intersection with the long end of his baton; (2) Martinez's "shove" along with Lopez's act of taking Plaintiff's banner, made them integral participants in Felix's use of the 40-milimeter ("40 mm") launcher against Plaintiff; and (3) Felix shot Plaintiff with a 40 mm projectile.

Lopez and Martinez move for summary judgment as a matter of law on the grounds that (1) Martinez's actions were "reasonable" and (2) neither Lopez nor Martinez was an integral participant in Felix's use of the 40 mm launcher against Plaintiff. Felix moves for summary judgment on the grounds that he used

reasonable force because Plaintiff posed an immediate threat of violence or physical harm to another officer.

### a. Martinez's Use of Force

Martinez moves for summary judgment on the ground that his "push" to "guide" Plaintiff out of the intersection was reasonable and, therefore, not excessive force. "[T]he question [in an excessive force inquiry] is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989) (internal quotations and citation omitted). "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *Id*. at 396. The Court must "balance the 'nature and quality of the intrusion' on a person's liberty" with "the government's interest in the application of force" to determine whether the use of force was objectively reasonable under the circumstances. *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1056 (9th Cir. 2003) (citing *Graham*, 490 U.S. at 386). In evaluating reasonableness, the Court considers the government's interest in the use of force by examining "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010) (quoting *Graham*, 490 U.S. at 396). Whether the suspect posed an immediate threat to the safety of the officers or others is the "most important" factor. *Id*. (citations omitted). "These [three Graham] factors, however, are not exclusive," and the Court must "examine the totality of the circumstances and consider whatever specific factors may be appropriate in a particular case." *Id*. (internal quotations and citations omitted). "[S]ummary judgment or judgment as a matter of law in excessive force cases should be granted sparingly . . . because police misconduct cases almost always

turn on a jury's credibility determinations." *Id*.

Defendants submit body-worn camera video[4] of the incident.  (Declaration of Jeremiah Johnson ("Johnson Decl."), Ex. A.)  The video footage is three minutes and twenty-four seconds. (*Id.*)  The footage depicts officers in a skirmish line walking east on Hollywood Boulevard toward the intersection of Ivar Avenue. (*Id.*)  Plaintiff and a woman are seen at 2:34 standing in the intersection of Ivar Avenue holding a large, white, handmade banner measuring approximately 7.6 feet by 3.8 feet, which states: 'Protect Our Communities; Defund Police; Black Lives Matter.' (*Id.*)  At 2:42, officers rush the intersection of Ivar Ave. (*Id.*)  Plaintiff is seen holding the banner with his left hand. (*Id.*)  His right hand is raised in the air above his head. (*Id.*)  At 2:49, Martinez is seen pushing another protestor in the northern direction out of the intersection. (*Id.*)  At 2:52, Martinez is seen approaching Plaintiff's left side as Lopez pulls the banner out of Plaintiff's hands. (*Id.*)  Martinez appears to push towards Plaintiff's abdomen area with his baton. (*Id.*)  In response, Plaintiff is seen walking backward in a northeasterly direction with both hands raised in the air. (*Id.*)  At 2:54, Felix is seen walking in an easterly direction and pointing the 40 mm launcher toward Plaintiff. (*Id.*)  At 2:55, Felix fires the 40 mm launcher at Plaintiff. (*Id.*)  At 2:56, Plaintiff is seen bending forward at the waist. (*Id.*)

Defendants cite to Plaintiff's testimony that Martinez's "push" or "shove" did not cause Plaintiff any physical injury, and that Plaintiff did not have an independent recollection of being pushed. *See* Deposition of Benjamin Montemayor ("Montemayor Dep.") (Johnson Decl., Ex. C.) at 125:9-11, 157:10-13.  In opposition, Plaintiff offers video footage of the incident along with his deposition testimony that Martinez's contact was a "hard push" that caused him to lose his balance and composure. *See* Montemayor Dep. at 121:21-122:7.

---

[4] The parties agreed that the body camera videos exchanged in discovery are authentic and admissible as evidence for purposes of the Motions.

The only *Graham* factor on which the parties provide evidence is whether Plaintiff posed an immediate threat to the safety of the officers.  Defendants offer evidence that the banner Plaintiff held posed a danger to the safety of the officers and needed to be removed because it was being used as a shield that obstructed the officers' view of incoming projectiles.  *See* Dep. of Tamera Bruketta (Johnson Decl. Ex. B) 74:12- 24, 75:1-7, 77:14-25, 78:1, 92:24-25, 93:1-8; Dep. of Robert Martinez (Johnson Decl. Ex. E) 150:22-25, 151:1-18; Dep. of Anthony Lopez (Johnson Decl. as Ex. D) 176:5-15, 189:12-16.  Plaintiff presents evidence in opposition that it was clear that he was unarmed and walked backwards away from the officers with empty hands.  Plaintiff offers a declaration wherein he declared the following:

    i.    I observed LAPD officers form a skirmish line along Hollywood Boulevard and advance in my direction. I heard shots fired without hearing any warning. Though I was afraid and confused by the officers' conduct, I wanted to continue expressing my opinions and raised the banner while facing the advancing LAPD officers.

    ii.    I continued to raise the banner while I stood on the south crosswalk of Hollywood Boulevard and Ivar Avenue as a form of protest and political expression. I proudly raised the banner and wanted the LAPD officers to see what the banner said.

    iii.    While I was near the intersection of Hollywood Boulevard and Ivar Avenue on June 2, 2020, I heard no announcements or orders from any LAPD officer directing me to leave or saying that the protest was unlawful. As a result, I believed I could continue protesting there.

    iv.    I did not use the banner as a shield against the officers on June 2, 2020.

    v.    I did not use the banner to obstruct the officers' view on June 2, 2020. (Dkt. 122-1 p. 2.)

The evidence creates a genuine issue of material fact as to whether Martinez's push was excessive which precludes summary judgment.  Therefore, the Court **DENIES** summary judgment on Plaintiff's excessive force claim against Martinez.

/

**b. Integral Participant Theory**

Plaintiff asserts an excessive force claim against Lopez and Martinez based on the theory that (1) Lopez was an integral participant in Martinez's excessive force and (2) Lopez and Martinez were integral participants in Felix's use of the 40 mm launcher.

Under the integral participant doctrine, defendants who are "integral participants" can be liable for claims under § 1983, "only if (1) the defendant knew about and acquiesced in the constitutionally defective conduct as part of a common plan with those whose conduct constituted the violation, or (2) the defendant set in motion a series of acts by others which the defendant knew or reasonably should have known would cause others to inflict the constitutional injury." *Peck v. Montoya*, 51 F.4th 877, 891 (9th Cir. 2022). "'[I]ntegral participation' does not require that each officer's actions themselves rise to the level of a constitutional violation," [b]ut it does require some fundamental involvement in the conduct that allegedly caused the violation." *Blankenhorn v. City of Orange,* 485 F.3d 463, 481 n.12 (9th Cir. 2007). However, the "integral participant" doctrine does not implicate government agents who are "mere bystanders" to the alleged conduct. *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1090 (9th Cir. 2011).

Applying this caselaw, the Court finds there is no evidence to support that Lopez was an integral participant in Martinez's push, or that Lopez and Martinez were integral participants in Felix's shooting.  Lopez and Martinez provide deposition testimony corroborated by Felix's testimony that: (1) they did not know Felix was going to use the 40 mm against Plaintiff; (2) they did not form any plan with Felix to use the 40 mm against Plaintiff; and (3) they did not order, direct, or encourage Felix to use the 40 mm against Plaintiff.  *See* Dep. of Lopez (Johnson Decl., Ex. D) 195:9-11, 204:7-25, 229:1-2; Dep. of Martinez (Johnson Decl., Ex. E) 150:22-25, 151:1-18, 143:24-25, 144:1-16, 147:19-25, 148:1-14;

1  Dep. of Felix (Johnson Decl., Ex. F) 383:4-17, 387:1-23, 391:8-10, 394:6-25,

2  395:1-8, 417:2-25.  There is no evidence to support that Lopez set in motion acts

3  by Martinez or Felix that he knew or should have known would cause a

4  constitutional violation.  Thus, the Court **GRANTS** summary judgment on

5  Plaintiff's excessive force claim against Lopez.  Likewise, there is no evidence to

6  support that Martinez set in motion acts by Felix that he knew or should have

7  known would cause a constitutional violation.  Therefore, this theory cannot be

8  used to support Plaintiff's excessive force claim as to Martinez.

9  ### c.  Felix's Use of Force

10  Felix moves for summary judgment on the grounds that the totality of the

11  circumstances show that his use of force was objectively reasonable.  Felix offers

12  deposition testimony that he fired the 40 mm launcher because he observed

13  Plaintiff "immediately and rapidly advance towards Officer Martinez" who had

14  turned away from and lost sight of Plaintiff.  *See* Dep. of Felix (Lee Decl., Ex. L)

15  382:24-384:13, 386: 25 – 387:14.  In opposition, Plaintiff relies on video footage

16  of the incident, as well as the expert report of Roger Clark, a police practices

17  expert, who opined that Plaintiff "did not present a threat of injury to the officers,

18  the public, or property."  *See* Declaration of Roger Clark and Expert Report;

19  Declaration of Shaleen Shanbhag ("Shanbhag Decl."), Ex. 1 at 21:40:41-

20  21:41:02.  Plaintiff also offers Intradepartmental Correspondence from the Office

21  of the Inspector General to the Los Angeles Board of Police Commissioners

22  ("BOPC") stating that Plaintiff "did not assume a fighting stance, clench his fists,

23  or issue any verbal threats."  *See* Shanbhag Decl. Ex. 7 at 47.  The evidence

24  submitted creates a genuine issue of material fact regarding whether Felix's use of

25  the 40 mm launcher was excessive under the circumstances, a question of fact that

26  a jury will have to decide.  When the evidence viewed in the light most favorable

27  to the plaintiff could support a finding of excessive force, the defendants are not

28  entitled to summary judgment. *See Smith v. City of Hemet*, 394 F.3d 689, 701 (9th

Cir. 2005) ("Because [the excessive force inquiry] nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, [the Ninth Circuit has] held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." (citing *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002)). Thus, the Court **DENIES** summary judgment on Plaintiff's excessive force claim as to Felix.

### 2. First Amendment Retaliation (Third Cause of Action)

Plaintiff alleges that Lopez, Martinez, and Felix unlawfully retaliated against him for engaging in constitutionally protected activity and for the content and viewpoint of his expressions, in violation of his First Amendment rights. To establish a First Amendment retaliation claim, Plaintiff must prove that (1) he engaged in constitutionally protected activity; (2) Defendants' actions would "chill a person of ordinary firmness" from continuing to engage in the protected activity; and (3) the protected activity was a substantial motivating factor in Defendants' conduct— *i.e.*, that there was a nexus between Defendants actions and an intent to chill speech. *Arizona Students' Ass'n v. Arizona Bd. of Regents*, 824 F.3d 858, 867 (9th Cir. 2016) (citations omitted). Plaintiff need only show that Defendants "intended to interfere" with his First Amendment rights and that he suffered some injury as a result; Plaintiff is not required to demonstrate that his speech was actually suppressed or inhibited. *Id.*

#### a. Lopez and Martinez

Lopez and Martinez move for summary judgment on the third element of Plaintiff's First Amendment claim. This factor often "involves questions of fact that normally should be left for trial," and that is the case here. *Index Newspapers LLC v. United States Marshals Serv.*, 977 F.3d 817, 827 (9th Cir. 2020). Lopez and Martinez offer evidence that they did not know what Plaintiff's banner said, never made comments against the protests or Plaintiff, and did not treat Plaintiff differently from other people present. *See* Dep. of Lopez (Johnson Decl., Ex. D)

at 132:23-25, 133:1-2, 198:2-23; Dep. of Martinez (Johnson Decl., Ex. E) 143:6-22.  In opposition, Plaintiff offers evidence of the following: (1) the banner was approximately 7.6 feet by 3.8 feet; (2) deposition testimony that "as [Lopez] looked to [his] left, he saw a large banner" "with some writing on it,"; (3) deposition testimony that Martinez observed two individuals holding up a banner and his awareness that the protests were "the result of individuals that were upset over excessive force by police" and called for "the defunding of police,"; and (4) the expert report of Roger Clark opining that Lopez "deliberately target[ed] Mr. Montemayor without regard for his protected First Amendment rights."  *See* Shanbhag Decl., Ex. 7 at 8, Ex. 12 at 31; Dep. of Lopez at 175:18-176:15; Dep. of Martinez at 133:22- 135:10.  Based on the evidence, Plaintiff contends that the Officers' decisions to target him, snatch and discard the banner, and push him were impermissibly motivated by his banner advocating for them to be "put out of a job."  Therefore, the evidence creates a genuine issue of material fact as to whether Plaintiff's banner and the act of protesting at an anti-police rally were substantial factors that motivated Lopez and Martinez's conduct.

### b. Felix

Felix moves for summary judgment on Plaintiff's First Amendment claim on the same grounds as Lopez and Martinez.  Felix testified that he could not recall if Plaintiff was holding a banner.  *See* Dep. of Felix (Lee Decl., Ex. L) 380:14-21.  In opposition, Plaintiff offers the same evidence in response to the City Defendants' arguments.  As discussed, the evidence creates a genuine issue of material fact as to whether the anti-police content in Plaintiff's banner and the act of protesting at an anti-police rally were substantial factors that motivated Felix's conduct in violation of Plaintiff's First Amendment rights.

*        *        *

A reasonable juror could find that the anti-police content in Plaintiff's banner and his act of participating in the protest, together or separately, were

substantial or motivating factors for Lopez, Martinez, and Felix in violation of Plaintiff's First Amendment rights.  Thus, the Court **DENIES** summary judgment on Plaintiff's First Amendment retaliation claim.

### 3. Qualified Immunity

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quotations omitted). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011); *see also Saucier v. Katz*, 533 U.S. 194, 200 (2001) (explaining that qualified immunity is "an immunity from suit rather than a mere defense to liability"). When determining whether an officer is entitled to qualified immunity at summary judgment, courts consider (1) "whether the facts, taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a federal right" and (2) "whether the right in question was 'clearly established' at the time of the violation." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (alterations omitted). As already described, taking the facts in the light most favorable to Plaintiff, a jury could conclude that Lopez, Martinez, and Felix's conduct violated Plaintiff's constitutional rights. The question, therefore, becomes whether those rights were clearly established at the time of the violation.

"A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (internal quotations and citation omitted).  For a right to be clearly established, it "[does] not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id*. (quoting *Ashcroft v. al Kidd*, 563 U.S. 731, 741

(2011)).  A court must make its inquiry "in light of the specific context of the case, not as a broad general proposition." *Mullenix v. Luna*, 577 U.S. 7 (2015) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

"[W]here the officers' entitlement to qualified immunity depends on the resolution of disputed issues of fact in their favor, and against the non-moving party, summary judgment is not appropriate." *Wilkins v. City of Oakland*, 350 F.3d 949, 956 (9th Cir. 2003); *see also Orn v. City of Tacoma*, 949 F.3d 1167, 1181 (9th Cir. 2020) (denying qualified immunity because "[w]hat [the defendant] most forcefully contests is whether his alternative account of the shooting should be accepted as true," and explaining that "actual disputes of that order must be resolved by a jury, not by a court adjudicating a motion for summary judgment"). Having found genuine issues of material fact as to Plaintiff's excessive force and First Amendment retaliation claim, the Court cannot resolve qualified immunity as to Lopez, Martinez, and Felix at the summary judgment stage.

### 4.  Municipal Liability (Fourth-Sixth Causes of Action)

Plaintiff asserts a *Monell* claim in this case based on the City's failure to train, ratification, and official policy, practice, or custom regarding the use of excessive force.  Defendants move for summary judgment on the *Monell* claim on the grounds that (1) there was no constitutional violation committed by Lopez and Martinez and (2) Plaintiff fails to establish any of the three *Monell* theories pled.

A local governing body may be liable under Section 1983 only when "action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Municipalities can be held liable only for their own illegal acts and may not be held liable based on respondeat superior. *Id.* "[R]igorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Bryan County v. Brown*, 520 U.S. 397, 405 (1997). There are three ways to establish municipal liability under Section 1983:

(1) by showing a longstanding practice or custom which constitutes the municipality's standard operating procedure, (2) by showing that an official with final policymaking authority made the decision, or (3) by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate. *Ulrich v. City & Cty. of S.F.*, 308 F.3d 968, 984–85 (9th Cir. 2002).

**a. Longstanding Practice and Custom (Fourth Cause of Action)**

*Monell* liability may be based on the commission of a constitutional violation pursuant to a widespread practice or custom. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). A widespread "custom or practice" must be so "persistent" that it constitutes a "permanent and well settled city policy" and "constitutes the standard operating procedure of the local governmental entity." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (quoting *Monell*, 436 U.S. at 691); *Gillette v. Delmore,* 979 F.2d 1342, 1346 (9th Cir. 1992). "[A] custom or practice can be supported by evidence of repeated constitutional violations which went uninvestigated and for which the errant municipal officers went unpunished." *Hunter v. Cty. of Sacramento*, 652 F.3d 1225, 1236 (9th Cir. 2011). "Normally, the question of whether a policy or custom exists would be a jury question." *Trevino*, 99 F.3d at 920.

Defendants argue as a matter of law that Plaintiff cannot establish the City acted deliberately indifferent to training since the City ordered "extensive retraining" upon discovering such a need. In response, Plaintiff offers a review conducted by the Office of the Inspector General which made the following findings: Felix and Martinez did not advise supervisors of their force in violation of LAPD policy; Felix, Lopez, and Martinez did not properly activate their body work cameras; Felix used the 40 mm optic to aim at Plaintiff in violation of LAPD's 40 mm policy which prohibits targeting of the groin; during the George Floyd protests, the City gave Felix, Lopez and Martinez commendations for their

leadership, professionalism, and commitment during the protests.  Shanbhag Decl., Ex. 7 at 38.  Plaintiff also offers the After Action Report that made 67 findings criticizing the LAPD's conduct during the protests, including the inadequacy of LAPD's two-hour 40 mm Academy training, and discussed the City's history of legal settlements and agreements following lawsuits filed in connection with police conduct at large events, including the 2000 Democratic National Convention, MacArthur Park Incident, Occupy LA, and Ferguson Demonstrations.  Shanbhag Decl., Ex. 28.  In each settlement, there were mandates that the Department correct policy, procedures, and training regarding various components of the management of protests and demonstrations. (*Id.*) Based on the evidence submitted by Plaintiff, the Court **DENIES** summary judgment on Plaintiff's *Monell* claim based on practice or custom.

### b.  Ratification (Fifth Cause of Action)

To show ratification, "the policymaker must have knowledge of the constitutional violation and actually approve of it," and "[a] mere failure to overrule a subordinate's actions, without more, is insufficient to support a § 1983 claim." *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004).  The Ninth Circuit states that ratification liability may attach when a final policymaker ratifies a subordinate's unconstitutional action and the basis for it.  *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)).  Ratification occurs when the official policymaker involved has adopted and expressly approved of the acts of others who caused the constitutional violation.  *Trevino v. Gates*, 99 F.3d 911, 920 (9th Cir. 1996).

Defendants argue they are entitled to summary judgment on Plaintiff's theory of ratification because it is undisputed that the City formally disapproved of Office Felix's action in finding it to be out of policy and imposing extensive retraining.  *See* Shanbhag Decl., Ex. 45 at 1.  In addition to the Los Angeles Board of Police Commissioners' ("BOPC") adjudicating Felix's use of the 40-millimeter

1    against Plaintiff as "out of policy" and warranting administrative disapproval,

2    Board however, Plaintiff offers excerpts from the LAPD's TEAMS Reports for

3    Lopez, Martinez, and Felix commending them for their leadership during the

4    protests.  *See* Shanbhag Decl., Exs. 49, 50.  On July 15, 2020, Lopez and Martinez

5    received a "commendation/commended for display of

6    leadership/commitment/response to civil unrest during pandemic set as example to

7    rest of the county."  *Id.* The City likewise commended Officer Felix for his

8    actions, stating: "Commendation/Thank you for the excellent display of

9    leadership, professionalism, and commitment to our community for the Los

10    Angeles civil unrest." *Id*.

11           While the BOPC's after-the-fact findings cannot be the sole basis for a

12    ratification claim, a reasonable jury could interpret the commendations to mean

13    that the City approved the Officers' decisions and conduct.  *See Lytle*, 382 F.3d at

14    987; *Christie*, 176 F.3d at 1239; *see, e.g., German*, 2017 WL 6547472, at *4

15    ("*Monell* liability requires something more than an investigative group accept[ing]

16    an officer's version over a victim's differing version of the circumstances

17    surrounding a shooting.  Accordingly, the Court declines to adopt the R&R's

18    conclusion that Plaintiff's *Monell* claim survives summary judgment based solely

19    on the fact that Chief Cheesman and the review board found that Officer Roberts's

20    conduct, as the review board believed it to have occurred, was within the Fircrest

21    Police Department's use of force policy.").  The City's statements "tend to show

22    that it endorsed or approved the unconstitutional conduct of individual officers."

23    *Dorger v. City of Napa*, 2012 WL 3791447, at *5 (N.D. Cal. Aug. 31, 2012).  The

24    evidence creates a genuine issue of material fact on *Monell* liability based on

25    ratification.  *See Christie*, 176 F.3d at 1240 ("holding that Monell liability may be

26    appropriate if a representative of the municipality "affirmatively approved" of the

27    allegedly unconstitutional conduct"); *Hernandez v. City of San Jose*, 241 F. Supp.

28    3d 959, 979–80 (N.D. Cal. 2017), aff'd in part, dismissed in part, 897 F.3d 1125

(9th Cir. 2018) (holding that the police chief's statements praising the actions of his officers were "sufficient to state a claim that the City is liable for the police officers' allegedly unconstitutional actions"). Based on the evidence submitted by Plaintiff, the Court **DENIES** summary judgment on Plaintiff's *Monell* claim based on ratification.

### c.  Inadequate Training (Sixth Cause of Action)

To prevail on a *Monell* claim based on a failure to adopt an adequate policy or inadequate training, Plaintiffs must demonstrate, *inter alia*, that the City was deliberately indifferent to the substantial risk that its policies were inadequate to prevent violations of law by its employees or deliberately indifferent to the known or obvious consequences of its failure to train its police officers adequately. *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143-45 (9th Cir. 2012). "Deliberate indifference" requires proof that a municipal actor disregarded a known or obvious consequence of his action.  *Connick v. Thompson*, 563 U.S. 51, 61 (2011) ("[W]hen city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program."); *see also Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1077 (9th Cir. 2016) (en banc) (a municipality is deliberately indifferent when "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.") (citing *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)).

Defendants argue as a matter of law that Plaintiff cannot establish a policy and practice liability theory under *Monell* based on this incident alone.  In addition, Defendants argue Plaintiff's admission that Felix was required to undergo retraining after the incident admits there was a policy in place to protect

Plaintiff's constitutional rights from misuse of the 40 mm launcher.  In opposition, Plaintiff offers the expert report of Roger Clark, who opined that the "City knew of the deficiencies in its training since at least 2000" "in light of prior settlements entered into specifying these constitutional duties over the years."  Shanbhag Decl., Ex. 12 at 34-35.  Plaintiff also offers an "Independent Examination of the Los Angeles Police Department 2020 Protest Response," ("Independent Examination AAR") which was requested by the Los Angeles City Council and prepared as a result of the George Floyd protests.  Shanbhag Decl., Ex. 28.  The Independent Examination AAR drew the following conclusions:

1) An independent review team made 67 findings which resulted in 22 recommendations;

2) The LAPD did not maintain some of the requirements from prior settlements following lawsuits challenging its conduct at other large protests;

3) Over 7,800 personnel were trained (certified) to deploy the 40 mm during a two-hour block of instruction at the ICDC course. However, the Review Team did not find the two hours of training to be sufficient given the skill level needed to deploy the 40 mm in a chaotic public order policing environment.

4) Officers are required to be trained one time on the 40 mm system. Deploying the 40 mm in public order policing situations requires recurring certification and training.

5) The skill level required to deploy the 40 mm in chaotic public order policing situations is high. Officers must be extremely competent and possess excellent marksmanship skills. It is unlikely that all officers trained possess the marksmanship skills necessary to competently deploy the 40 mm system under those circumstances.

6) The Department's Use of Force Tactics directive authorizing the use of 40 mm has no detailed guidance on use in public order policing situations.

7) Training on the 40 mm system use during crowd control situations was insufficient. (Shanbhag Decl., Ex. 28 at 10, 58-75.)

Based on the evidence submitted by Plaintiff, the Court **DENIES** summary judgment on Plaintiff's *Monell* claim based on inadequate training.

### 5. Supervisory Liability (Fourth-Sixth Causes of Action)

Plaintiff relies on supervisory liability as a theory to support his *Monell*

19

claims against Chief Moore in his individual capacity.  "Supervisory liability is imposed against a supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates, for his acquiescence in the constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others." *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009) (quoting *Preschooler II v. Clark County Sch. Bd. of Trustees*, 479 F.3d 1175, 1183 (9th Cir.2007). In a section 1983 claim, "a supervisor is liable for the acts of his subordinates 'if the supervisor participated in or directed the violations, or knew of the violations of subordinates and failed to act to prevent them.'" *Id.*  "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Id.*; *see also Mackinney v. Nielsen*, 69 F.3d 1002, 1008 (9th Cir.1995) ("Under § 1983, a supervisor may be liable if there exists either '(1) his or her personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'") In *Larez v. Los Angeles*, the Ninth Circuit held that former LAPD Chief Gates could be individually liable because he "condoned, ratified, and encouraged the excessive use of force."  *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991).

Defendants argue that Plaintiff has offered no evidence to establish his supervisory liability claim against Chief Moore.  In opposition, Plaintiff offers Chief Moore's deposition testimony that he was "responsible for the department during that period of time and involved in briefings, consultations and providing direction and guidance as various briefings on various issues and topics arose" and Chief Moore was "the person who was ultimately responsible for the LAPD's handling of that period of unrest." Moore Non-Conf. Dep. at 28:14-17; 39:9-23. Plaintiff also offers Chief Moore's response to admissions wherein he admitted he

was "generally aware of the structure settlement terms" related to the 2000 Democratic National Convention protest lawsuit (*National Lawyers Guild v. City of Los Angeles*) and the 2007 MacArthur Park protest lawsuit (*Multi-Ethnic Worker Organizing Network v. City of Los Angeles*).  Shanbhag Decl., Ex. 53 at 14:9-15:20.  Finally, Plaintiff's police practices expert opined that Chief Moore "expressly condoned the LAPD's conduct, including Felix's use of force, in his statements and reports made after the event, and his decision not to discipline Officer Felix." Shanbhag Decl., Ex. 12 at 33.  Based on this evidence and the arguments made, for summary judgment purposes, Plaintiff may rely on supervisory liability to support his *Monell* claims against Chief Moore in his individual capacity.

**B.    State Law Claims**

### 1. Violation of the Bane Act (Seventh Cause of Action)

The Bane Act, California Civil Code § 52.1, creates a cause of action against those who interfere with constitutional rights "by threat, intimidation, or coercion."  The Bane Act requires "a specific intent to violate the arrestee's right to freedom from unreasonable seizure." *Reese v. Cty of Sacramento*, 888 F.3d 1030, 1043 (2018) (quoting *Cornell v. City and Cty. of San Francisco*, 17 Cal. App. 5th 766, 801-802 (2017).).  A plaintiff must prove that the offending officer "intended not only the force, but its unreasonableness, its character as more than necessary under the circumstances." *Id*. at 1045 (internal quotation marks omitted). The specific intent requirement can be satisfied by "a reckless disregard for a person's constitutional rights." *Reese*, 888 F.3d at 1045.  Having found no evidence to support Plaintiff's excessive force claim against Lopez, the Court **GRANTS** summary judgment as to Lopez.  As discussed, there are genuine issues of material fact as to Martinez and Felix's use of force in violation of Plaintiff's Fourth Amendment Rights.  Therefore, the Court **DENIES** summary judgment on Plaintiff's Bane Act claim as to Martinez, Felix, the City, and Chief Moore.

1

**2.  Violation of the Ralph Act (Eighth Cause of Action)**

2
The Ralph Act, California Civil Code § 51.7, provides that "[a]ll persons

3
within [California] have the right to be free from any violence, or intimidation by

4
threat of violence, committed against their persons or property because of political

5
affiliation . . . ." Cal. Civ.Code §§ 51.7(a), 51(b).  To establish a Ralph Act claim,

6
a plaintiff must show (1) the defendant intentionally threatened violence against

7
the plaintiff or her property, whether or not the defendant actually intended to

8
carry out the threat; (2) a substantial motivating reason for the defendant's conduct

9
was the perception of the plaintiff's protected characteristic as defined by the

10
statute; (3) a reasonable person in plaintiff's position would have believed that

11
defendant would carry out the threat; (4) a reasonable person in plaintiff's position

12
would have been intimidated by defendant's conduct; (5) Plaintiff was harmed;

13
and (6) Defendant's conduct was a substantial factor in causing the plaintiff's

14
harm. *Black Lives Matter-Stockton Chapter v. San Joaquin Cnty. Sheriff's Off.*,

15
398 F. Supp. 3d 660, 679 (E.D. Cal. 2019) (citing Judicial Council of California

16
Civil Jury Instruction 3064 (2019).)

17
The evidence offered in support of the parties' positions with respect to

18
Plaintiff's section 1983 claims create genuine issues of material facts as to

19
whether Lopez, Martinez, or Felix's conduct was motivated by Plaintiff's anti-

20
police beliefs.  Therefore, the Court **DENIES** summary judgment on Plaintiff's

21
Ralph Act claim as to Lopez, Martinez, and Felix.  Plaintiff does not offer

22
evidence that supports his Ralph Act claim against the City or Chief Moore.

23
Therefore, the Court **GRANTS** summary judgment on Plaintiff's Ralph Act Claim

24
as to the City and Chief Moore.

25

**3.  Assault and Battery (Ninth and Tenth Causes of Action)[5]**

26
Under California law, "claims for assault and battery against peace officers

27

28
[5] In the FAC, Plaintiff alleges Assault and Battery as separate causes of action, but
for purposes of this order and consistent with the Motions, the Court discusses

should be resolved under the same liability standard as 42 U.S.C. § 1983 excessive force causes of action." *Briley v. City of Hermosa Beach*, 2008 WL 4443894, at *3 (C.D. Cal. Sept. 29, 2008) (citing *Saman v. Robbins*, 173 F.3d 1150, 1156 n. 6 (9th Cir. 1999) (applying the same standard for excessive force for both federal and California law); *Susag v. Lake Forest*, 94 Cal.App.4th 1401, 1415 (2002) (adopting federal § 1983 standards for resolution of state law tort claims against peace officers)).

As discussed, there are genuine issues of material facts as to Martinez and Felix's use of force that preclude summary judgment on Plaintiff's assault and battery claims. Therefore, the Court **DENIES** summary judgment on Plaintiff's claims for assault and battery as to Martinez and Felix. Having found no evidence to support Plaintiff's excessive force claim against Lopez, the Court **GRANTS** summary judgment as to Lopez and the City.

### 4. Negligence (Eleventh Cause of Action)

The elements of a negligence cause of action are: (1) a legal duty to use due care; (2) a breach of such legal duty; (3) the breach was the proximate or legal cause of the resulting injury; and (4) actual loss or damage resulting from the breach of the duty of care." *Megargee v. Wittman*, 550 F. Supp. 2d 1190, 1209 (E.D. Cal. 2008). Based on the allegations in the FAC, it is the Court's understanding that this claim is based on Martinez and Felix's use of force. Therefore, the Court **DENIES** summary judgment on Plaintiff's claim for negligence as to Martinez, Felix, the City, and Chief Moore. The Court **GRANTS** summary judgment as to Lopez.

### 5. Intentional Infliction of Emotional Distress (Twelfth Cause of Action)

To state a claim for IIED, Plaintiff must show that (1) he was subjected to

them together.

extreme and outrageous conduct by Defendants; (2) Defendants intended to cause, or recklessly disregarded the probability of causing, emotional distress; (3) Plaintiff suffered severe or extreme emotional distress; and (4) Defendants' outrageous conduct was the actual and proximate cause of Plaintiff's emotional distress. *Avina v. United St*ates, 681 F.3d 1127, 1131 (9th Cir. 2012); *see also Flesch v. Cnty. of Lake*, 2021 WL 3633835, at *5 (N.D. Cal. Aug. 17, 2021). "Liability for intentional infliction of emotional distress 'does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" *Hughes v. Pair*, 46 Cal. 4th 1035, 1051 (2009). To be outrageous, conduct "must be so extreme as to exceed all bounds of that usually tolerated in a civilized society." *Schneider v. TRW, Inc.,* 938 F.2d 986, 992 (9th Cir.1991).

As discussed, there are genuine issues of material fact regarding whether the Defendants' conduct was extreme and outrageous. Therefore, the Court **DENIES** summary judgment as to Plaintiff's claim for intentional infliction of emotional distress as to Lopez, Martinez, Felix, and the City.

## C.    Declaratory Relief (Thirteenth Cause of Action)

Plaintiff seeks a declaration of his rights and Defendants' obligations under the applicable laws as alleged in the Complaint. The declaratory relief claim is predicated on the issue of whether Plaintiff's rights were not violated. To the extent the parties treat declaratory relief as a separate cause of action, summary judgment is **DENIED**.

## VI.   CONCLUSION

Accordingly, the Court **DENIES** Felix's Motion for Summary Judgment. The Court **GRANTS in part** and **DENIES in part** the City Defendants' Motion for Summary Judgment as follows:

1.  Martinez's motion for summary judgment as to Plaintiff's Section 1983 claim for violation of the Fourth Amendment is **DENIED**;

2.  Lopez's motion for summary judgment as to Plaintiff's Section 1983 claim for violation of the Fourth Amendment is **GRANTED**

**3.** Lopez and Martinez's motion for summary judgment as to Plaintiff's First Amendment Retaliation claim is **DENIED**;

**4.** The City's motion for summary judgment as to Plaintiff's *Monell* claims is **DENIED**;

**5.** Chief Moore's motion for summary judgment as to Plaintiff's *Monell* claims is **DENIED**;

**6.** Lopez's motion for summary judgment as to Plaintiff's Bane Act claim is **GRANTED**;

**7.** Martinez, the City and Chief Moore's motion for summary judgment as to Plaintiff's Bane Act claim is **DENIED**;

**8.** Lopez and Martinez's motion for summary judgment as to Plaintiff's Ralph Act claim is **DENIED**;

**9.** The City and Chief Moore's motion for summary judgment as to Plaintiff's Ralph Act claim is **GRANTED**;

**10.** Martinez's motion for summary judgment as to Plaintiff's Assault and Battery claim is **DENIED**

**11.** Lopez and the City's motion for summary judgment as to Plaintiff's Assault and Battery claim is **GRANTED**.

**12.** Martinez, the City and Chief Moore's motion for summary judgment as to Plaintiff's Negligence claim is **DENIED**.

**13.** Lopez's motion for summary judgment as to Plaintiff's Negligence claim is **GRANTED.**

**14.** Lopez, Martinez, and the City's motion for summary judgment as to Plaintiff's Intentional Infliction of Emotional Distress claim is **DENIED**;

**15.** The City Defendants' motion for summary judgment as to Plaintiff's claim for Declaratory Relief is **DENIED**.

**IT IS SO ORDERED.**

DATED: MARCH 28, 2023

_____
CONSUELO B. MARSHALL
UNITED STATES DISTRICT JUDGE